OPINION
Defendant-appellant Cynthia Barney appeals from her conviction and sentence, following a no-contest plea, for DUI and Speeding. Barney contends that the trial court erred by denying her motion to suppress. She contends that the police officer's detention of her for the purposes of conducting field sobriety tests was not based upon a reasonable suspicion that she was driving under the influence of alcohol. Based upon our review of the record, we conclude that the police officer's suspicion was reasonable, justifying the detention. Accordingly, the judgment of the trial court is Affirmed.
 I
At about 2:25 a.m. on October 31, 1998, Kettering Police Officer Scott Drerup, while operating a marked cruiser, observed a truck being driven by Barney southbound on Wilmington Pike. There was a 35 mile per hour posted speed limit, and Drerup used a radar gun to determine that Barney was traveling at between 51 and 52 miles per hour. Drerup stopped Barney for Speeding.
Drerup testified as follows, concerning what happened thereafter.
 I told the defendant the reason that I had stopped her. I then asked her if she was aware what her speed was. The Defendant replied to me that, No, she was too busy concentrating on pulling over for me. That she was not paying attention to her speed. So I then asked her, "Well, prior to you seeing me pulling you over, were you aware of your speed?" And she said "No." I then asked her if she new [sic] what the speed limit was on Wilmington Pike at Beavercreek Lane, and she stated "Forty (40) or forty-five (45) miles per hour."
And it's actually thirty-five (35)?
Yes.
Ok. Did you ask her where she was coming from?
 A. Yes. I asked her where she was coming from and she said she had been out on Linden Avenue and I asked her "Where at on Linden Avenue?" and she just told me "Meeting some friends."
 In this conversation and this approach to her how close did you get?
 A. I was just, with her window I was standing just a little bit behind the window leaning forward so . . .
Did you notice any, anything about her person?
 A. Yes. I could smell what I would classify as a moderate odor of an alcoholic beverage on her. More detectable when she spoke. I also noticed that her eyes were watery and, and slightly bloodshot.
Do you have experience with intoxicated persons?
A. Yes.
 How long have you been on the Kettering Police Department?
A. Just a little under three (3) years.
 Okay. And you got police experience before that, though, don't you?
A. Yes.
And that was with Centerville P. D.?
A. Yes.
How long?
A. I worked patrol there for about a year and a half.
 Okay. And have you had specialized training in the detection and apprehension of alcohol intoxicated drivers?
A. Yes.
 Have you made arrests for driving under the influence of alcohol before?
A. Yes.
Arrests for public intoxication offenses?
A. Yes.
Have you made permit holder checks?
A. Yes.
Frequently?
A. Yes.
 Do you see people in various stages of intoxication when you're doing go [sic] in these bars to check the permit?
A. Yes.
 Based on your experience, officer, did you have a suspicion that this individual that you had stopped and noticed these things might be under at [sic] influence of alcohol?
A. Yes.
 As a result of that, did you ask her about her alcohol, alcoholic consumption?
A. Yes.
What did she tell you?
 A. That was, she told me that she had, I believe, consumed two (2) beers.
Did you ask her how long that was?
 A. Yes. I believe her response was approximately a half hour ago prior to me stopping her.
 Okay. Based upon those answers, was your suspicion increased?
A. Yes.
 Did you ask her to eventually perform some field sobriety tests?
A. Yes.
Alright. What were those?
A. I did a total of six (6) tests.
Okay.
 A. I did the horizontal gaze nystagmus test, the one-leg stand test, the walk-and-turn, the finger-to-nose, the alphabet recital and the number count.
 Did you ascertain before giving these tests that the Defendant didn't have any physical or medical problems?
A. Yes.
And that she wasn't taking any kind of medication?
A. Yes.
 When she left the truck, where did you take these tests?
 A. I had her walk to, there was a sidewalk in front of 3075 Wilmington Pike on the west side of the road. I had her walk to the rear of her truck and then onto the sidewalk there.
 And when she was doing that, did you notice anything about her gait?
 A. I noticed that as she walked she had a slight sway to her walk.
As a result of Barney's poor performance on the field sobriety tests, Drerup concluded that she had been driving under the influence. Barney was arrested and charged with Driving Under the Influence and Speeding.
Barney moved to suppress the evidence obtained following the initial stop. She contended that her detention to perform the field sobriety tests constituted an unreasonable search and seizure. Following a hearing, the trial court overruled her motion. Thereafter, she pled no contest to both charges, was found guilty, and was sentenced accordingly. From her conviction and sentence, Barney appeals.
 II
Barney's sole Assignment of Error is as follows:
 IT WAS "UNREASONABLE," WITHIN THE MEANING OF THE FOURTH AMENDMENT, FOR THE OFFICER TO DETAIN APPELLANT FOR PURPOSES OF CONDUCTING FIELD SOBRIETY TESTS WHEN THE OFFICER HAD NO REASONABLE SUSPICION TO BELIEVE THAT APPELLANT WAS INTOXICATED; THUS THE TRIAL COURT ERRED WHEN IT OVERRULED THE SUPPRESSION MOTION.
Even a brief investigatory stop is a significant intrusion upon a citizen's liberty interests protected by the Fourth Amendment. Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868. However, a brief investigatory stop does not require the full extent of probable cause required for an arrest.
 In determining whether police intrusion upon a citizen's protected liberty interests is reasonable, both the extent of the intrusion and the basis for suspicion must be considered. In other words, the greater the intrusion, the greater the basis for suspicion must be. City of Xenia v. Beatty (Apr. 13, 1994), Greene App. No. 93-CA-28, unreported, citing Terry, supra. Thus, an analysis of an investigatory stop leading to an arrest requires careful attention to each stage of the detention in order to make sure that the extent of the intrusion represented by each stage is warranted by the extent of the officer's reasonable and articulable suspicion at that point.
State v. Smethhurst (Feb. 13, 1995), Clark App. No. 94-CA-24, unreported, at 3.
We conclude that Drerup had a sufficient basis for detaining Barney to conduct field sobriety tests. Although her detention for the purpose of conducting field sobriety tests was more than a negligible intrusion on her liberty interests, it was substantially less than the intrusion represented by an arrest, and therefore required less than the full measure of probable cause required for an arrest.
Drerup saw Barney traveling at between sixteen and seventeen miles per hour greater than the posted speed limit. Drerup had had experience observing persons under various degrees of the influence of alcohol. He smelled a moderate odor of an alcoholic beverage, which was more detectable when Barney spoke, suggesting that it was on her breath rather than otherwise on or about the truck. Drerup also noticed that Barney's eyes were watery and slightly bloodshot. Barney was somewhat vague when asked where she was coming from, but ultimately acknowledged that she had consumed two beers approximately a half hour before being stopped. Under the totality of these circumstances, we conclude that Drerup had a reasonable suspicion that Barney was driving while under the influence of alcohol, sufficient to justify the intrusion represented by the imposition of field sobriety tests.
Barney cites State v. Taylor (1981), 3 Ohio App.3d 197 andState v. Finch (1985), 24 Ohio App.3d 38. As Barney notes, however, those cases involve arrests based on nothing more than an odor of alcohol and "nominally" exceeding the speed limit. We conclude that these cases are distinguishable. Barney was merely detained for purposes of conducting field sobriety tests. She was not arrested until after her poor performance on those tests supplied probable cause to believe that she had been driving under the influence. Furthermore, her speeding was more than nominal. Drerup observed her traveling between 51 and 52 miles per hour in a 35-mile per hour posted zone.
Barney's sole Assignment of Error is overruled.
 III
Barney's sole Assignment of Error having been overruled, the judgment of the trial court is Affirmed.
GRADY, P.J., and BROGAN, J., concur.